**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Mr. JOE ARPAIO, Elected SHERIFF of
Maricopa County, State of Arizona
550 West Jackson Street
Phoenix, AZ 85003

                         Plaintiff,

       v.

The Honorable BARACK OBAMA, individually and
in his professional capacity as President of the
United States of America
1600 Pennsylvania Avenue
Washington, D.C. 20500

         and

The Honorable JEH JOHNSON, individually and in
his professional capacity as Secretary of the
U.S. Department of Homeland Security
12th & C Street SW
Washington, D.C. 20024

         and

The Honorable LEON RODRIQUEZ, individually
and in his professional capacity as Director of U.S.
Citizenship and Immigration Services
12th & C Street SW
Washington, D.C. 20024

         and

The Honorable ERIC HOLDER, JR., individually and
in his professional capacity as U.S. Attorney General
555 Fourth St. NW
Washington, D.C. 20530

                  Defendants.

**CIVIL COMPLAINT**

    Civil Action No.  _____

## **COMPLAINT**

Plaintiff sues the Defendants in this civil action.  The Defendants' Deferred Action for Childhood Arrivals (DACA) from June 15, 2012 and new November 20, 2014, Executive Order Amnesty (EOA) programs are unconstitutional abuses of the President's role in our nation's constitutional architecture and exceed the powers of the President within the U.S. Constitution. Even where Congress has granted authority to the executive branch, these programs are *ultra vires*, exceeding the bounds of delegated authority.  While Defendant Obama hijacks the language of previous immigration regulation and law, Defendant Obama fundamentally transforms the definition of key terms to create a radically new and different regime of immigration law and regulation.

DACA and EOA are sweeping changes to immigration law and regulation, operate on a "wholesale" level upon broad categories rather than "retail" as an individualized adjudication of persons one at a time, operate in and modify areas already regulated differently by existing regulations, and are a dramatic departure from prior interpretation and application of existing law and regulations.  Yet the Obama Administration purports to effect these dramatic changes by Executive Order announced by the President, implemented through his Cabinet Secretaries.

Even if the Court deems this constitutional, DACA and EOA are exercises of delegated law-making authority by the executive branch which must first go through rigid rule-making procedures under the Administrative Procedures Act.  The President cannot simply announce sweeping new rules and implement them by giving a speech.

Alternatively, Plaintiff challenges these executive branch actions pursuant to 5 U.S.C. §§ 702 through 706 as unlawful and invalid as arbitrary, capricious, an abuse of discretion, unreasonable, and/or otherwise not in accordance with law.

Plaintiff seeks a Declaratory Judgment, and preliminary and permanent injunctions. Plaintiff also challenges the executive branch action under this Circuit's Nondelegation Doctrine. As grounds therefore, Plaintiff alleges as follows:

## INTRODUCTION AND SUMMARY

Defendant Obama has announced and initiated actions under his purported inherent authority as President of the United States to grant amnesty by Executive Order, or more precisely by giving directions to Cabinet Secretaries.  The President states that he is doing so because he does not like the legislative decisions of the Congress.

In fact, "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Article I, Section 1, of the U.S. Constitution.   "The Congress shall have Power . . . To establish an uniform Rule of Naturalization,"   Article I, Section 8, of the U.S. Constitution.  There is nothing in the U.S. Constitution which offers any authority or role of the executive branch with regard to immigration, admission of aliens to the country, or naturalization or citizenship other than the President's duty that he "shall take Care that the Laws be faithfully executed…." Article II, Section 3, of the U.S. Constitution.

Defendant Obama has already purported to give amnesty, the status of lawful presence in the United States, and even the right to work lawfully in the United States to 611, 953[1] illegal aliens classified as "Dreamers" who arrived illegally in the United States with their parents.

---

[1] U.S. Citizen and Immigration Services, Number cf I-821p (Mar. 2014) available at http://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigrati on%20Forms%20Data/All%20Form%20Types/DACA/I821d_daca_fy2014qtr2.pdf

The Department of Homeland Security admits that these initiatives are "unprecedented." Despite the attempt to use familiar terminology, these initiatives are a dramatic departure from past precedent, interpretation, and application of immigration law.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as involving questions and controversies arising under the U.S. Constitution and the federal laws and regulations arising thereunder.

2. Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants and the federal government are primarily located in the District of Columbia.

## THE PARTIES

3. The Plaintiff Joe Arpaio is the elected Sheriff of Maricopa County, State of Arizona.  He has held the office of Sheriff since 1993, and has 57 years of law enforcement experience.  Previously, Plaintiff Arpaio served as Regional Director of the Drug Enforcement Administration ("DEA") of the U.S. Department of Justice, and served in Turkey, the Middle East, Mexico, and Central and South America and in cities around the United States. He later retried as head of the DEA for Arizona.

4. Defendant Obama currently holds the position of and serves as President of the United States.

5. Defendant Jeh Johnson currently holds the position of and serves as the Secretary of the Department of Homeland Security of the United States, appointed by the President and confirmed by the U.S. Senate.

6. Defendant Eric Holder holds the position of and serves as the Attorney General of the United States of America and head of the U.S. Department of Justice, appointed by the

President and confirmed by the Senate.  Although Defendant Holder has tendered his resignation, he made his resignation to be effective upon the appointment and confirmation of his successor to replace him.

7.  Defendant Leon Rodriquez is Director of the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security.  Rodriquez was previously the Director  of the U.S. Department of Health and Human Services Office for Civil Rights and from 2007 through 2010 he was the County Attorney for Montgomery County, Maryland.

8.  Each of the Defendants are being sued in their individual and official capacities.

## FACTS COMMON TO ALL COUNTS

9.  On November 20, 2014, Secretary of Homeland Security, Defendant Johnson, released a series of Memorandum orders – simultaneous with Defendant Obama's announcement speech – directing various parts of the U.S. Department of Homeland Security to implement Defendant Obama's "Executive Order Amnesty" program. Defendant Johnson's implementing orders are posted at: http://www.dhs.gov/immigration-action. Other agencies might issue similar orders. Defendant Obama's Executive Order Amnesty consists primarily of (1) expanding Obama's June 15, 2012 DACA program to include childhood arrivals who arrived after the earliest cut-off date, and (2) extending DACA to parents and other relatives of U.S. citizens or persons lawfully present.

10.  The extension of DACA to persons who arrived illegally as adults waive their illegal status. Currently, a person is not "admissible" or eligible to apply for any immigration status if they are currently in violation of U.S. immigration laws. Defendant Obama is waiving the prohibition for those who are illegally in the United States. Otherwise, they

would have to return to their home country, wait between 3 to 10 years, and reapply from their home country.

11. The issue of being a relative is a distraction because that is not a change from current law. Waiving illegal status is the key point which must be reviewed and acted upon by this Court.

12. Defendant Obama, through Defendant Johnson, gave other orders to refocus resources to border enforcement but in ways that are vague and premised upon unknown success in freeing up resources within the interior of the country. Another order directs Homeland Security to study the expansion of "parole" status to allow high-tech workers to stay in the United States and to give broader "grace periods" when immigrant workers are between jobs or legal status positions. Parole status cannot be used in this way, however.

**A.**     **President Obama's Executive Order Amnesty is Unconstitutional**

13. The Supreme Court applied a fundamental analysis of the constitutional architecture and structure of the U.S. Constitution in *INS v. Chadha*, 462 U.S. 919 (1983).

14. Here, this case presents the reverse, mirror image of *INS v. Chadha*, 462 U.S. 919 (1983).

15. Even though any provision within legislation would normally be routinely accepted as an exercise of congressional authority, the Supreme Court found in *Chadha* that a legislative veto of executive branch action violated the U.S. Constitution, because it did violence to the constitutional architecture and structure.

16. The U.S. Constitution's structure is for Congress to legislate and the executive branch to implement legislation.

17. Here, Defendant President Obama is seeking to legislate in place of Congress.

18. DACA and EOA are unconstitutional in the same manner as in *Chadha*, because instead of legislation first passing both houses of Congress and then being sent to the President under the "Presentment Clause" for signature and implementation or veto, the President originates legislation by himself and then dares the Congress to disagree.

19. The Supreme Court has also required the executive branch to implement the laws passed by Congress in the so-called Impoundment cases.  Despite over 150 years of precedent allowing the President to use his discretion not to fully enforce a law or spend all the funds appropriated by Congress, the Supreme Court ordered the Nixon Administration that it must spend all the money appropriated by Congress.

20. The case of *Train v. City of New York*, 420 U.S. 35 (1975), held that "[t]he president cannot frustrate the will of Congress by killing a program through impoundment."

21. President Nixon had tried to control the budget deficit by not spending all of the funds appropriated by Congress where in the course of administration it found money could be saved, and "impounding" the unspent money to pay down the national debt.

22. Despite this process seeming to be a part of the core role of the executive branch to administer the funds appropriated, and consider actual circumstances, the Supreme Court ruled that the President had no discretion over how much of the funds to spend.

**B.**    **President Admits His Actions Today are Illegal**

23. Defendant Obama has repeatedly admitted and acknowledged that the amnesty he now attempts to issue to illegal aliens is illegal and/or unconstitutional, and he knows it.

> "The problem is that, you know, I am the President of the United States.  I am not the Emperor of the United States.  My job is to execute laws that are passed.  And Congress right now has not changed what I consider to be a broken immigration system.  And what that means is that we have certain obligations to enforce the laws that are in place even if we think that in many cases the results may be tragic."

-- President Barack Obama, February 14, 2013, in an internet town hall with young voters called a "Google hangout."  https://www.youtube.com/watch?v=FSV9n-v_0KI.

24. In an interview on the Telemundo television network with Jose Diaz-Balart on September 17, 2013,[2] Mr. Obama said he was proud of having protected the "Dreamers" — people who came to the United States illegally as young children — from deportation. But he also said that he could not apply that same action to other groups of people.

> "Here's the problem that I have, Jose.  And I've said this consistently.  My job in the Executive Branch is supposed to be to carry out the laws that are passed.  Congress has said here is the law when it comes to those who are undocumented.  And they've allocated a whole bunch of money for enforcement.  And what I have been able to do is to make a legal argument that I think is absolutely right, which is that given the resources we have we can't do everything that Congress has asked us to do.  What we can do is then carve out the Dream Act folks, saying young people who've basically grown up here are Americans we should welcome.  We're not going to have them operate under a cloud, under a shadow."

> "But if we start broadening that, then essentially I'll be ignoring the law in a way that I think would be very difficult to defend legally.  So that's not an option and I do get a little worried that advocates of immigration reform start losing heart and immediately thinking well, you know, somehow there's an out here.  If Congress doesn't act, we'll just have the President sign something and that will take care of.  We won't have to worry about it.  What I've said is that there is a path to get this done and that's through Congress.  And right now everybody should be focused on making sure that that bill that's already passed out of the Senate hits the floor of the House of Representatives."

C. **Border States Under Invasion by Violent Criminals Acting Across Unsecured Border, Subject to Domestic Violence from Foreign Invasion**

25. President Obama grounds his argument for granting amnesty by Executive Order to illegal aliens on the federal government having insufficient resources to prosecute and deport all of the illegal aliens that the executive branch has allowed into the country.

---

[2]    **NOTICIAS TELEMUNDO**, https://www.youtube.com/watch?v=wp68QI_9r1s

26. In fact, Defendant Obama's amnesty programs merely shift the burden to the States and local governments, creating severe burdens and a crime wave in States along the border.

27. Plaintiff Joe Arpaio is adversely affected and harmed in his office's finances, workload, and interference with the conduct of his duties, by the failure of the executive branch to enforce existing immigration laws, but has been severely affected by increases in the influx of illegal aliens motivated by Defendant Obama's policies of offering amnesty. In this regard, as detailed in Exhibits 1, 2 and 3 to this Complaint which is incorporated herein for reference, Plaintiff Arpaio has been severely affected and damaged by Defendant Obama's release of criminal aliens onto the streets of Maricopa County, Arizona. This prior damage will be severely increased by virtue of Defendant Obama's Executive Order of November 20, 2014, which is at issue.

28. Thus, the Office of the Sheriff has been directly harmed and impacted adversely by Obama's DACA program and will be similarly harmed by his new Executive Order effectively granting amnesty to illegal aliens.

29. Defendant Obama's past promises of amnesty and his DACA amnesty have directly burdened and interfered with the operations of the Sheriff's Office, and Defendant Obama's new amnesty program will greatly increase the burden and disruption of the Sheriff's duties.

30. First, experience has proven as an empirical fact that millions more illegal aliens will be attracted into the border states of the United States, regardless of the specific details.

31. Second, the experiences and records of the Sheriff's office show that many illegal aliens – as distinct from law-abiding Hispanic Americans – are repeat offenders, such that

Plaintiff Arpaio's deputies and other law enforcement officials have arrested the same illegal aliens for various different crimes.

32. Plaintiff Arpaio has turned illegal aliens who have committed crimes over to ICE, totaling 4,000 criminals in his jails for state crimes in just an eight-month period. However, over 36 percent keep coming back.

### D.  **Defendant Obama Orders Amnesty by Fiat**

33. Defendant Obama has ordered new programs and initiatives to grant millions of illegal aliens amnesty, consisting of lawful status and the authorization to work in the United States, which he will announce Thursday.

34. Already, this announcement is doing irreparable harm, because it will stimulate a new flood of illegal aliens crossing the United States-Mexican border.

35. Many people will die in the desert attempting to reach United States soil as a result.

36. Moreover, illegal aliens are being victimized by smugglers charging them dearly.

37. Defendant Obama has openly, clearly, and explicitly declared dozens of times that he is acting because he doesn't like the legislative decisions of the Congress.

### E.  **Executive Order Amnesty under Deferred Action for Childhood Arrivals**

38. Previously, on June 15, 2012, Defendant Obama (through his Secretary of Homeland Security) created a new immigration status not existing anywhere in the law, called the "Deferred Action for Childhood Arrivals" (DACA) status, without legislative authority and over the objection of the U.S. Congress.

39. DACA status for a person lasts for only two years, although renewal may be requested.

40. Thus, no vested interest or vested right has been created beyond each two-year period.

41. The Department of Homeland Security (DHS) admits on its website that DACA is contrary to past construction and application of the law:  "Over the past three years, this Administration has undertaken **_an unprecedented effort_** to transform the immigration enforcement system into one that focuses on public safety, border security and the integrity of the immigration system." *(Emphasis added)* Department of Homeland Security website page, "Deferred Action for Childhood Arrivals" [3]

    ### F.      Claim of Insufficient Resources

42. Defendant Obama contends that he is authorized to grant amnesty and work authorization to millions of trespassers on the grounds (in part) that Congress has provided insufficient resources for the executive branch to faithfully execute the laws concerning immigration and trespassers illegally present.

43. Therefore, Defendant Obama claims, he can and must prioritize his enforcement of the law.

44. The fatal defect with Defendant Obama's false excuse (pretext) is that the executive branch has not requested additional resources to secure the borders that Congress ever denied.

45. Each year, the executive branch under any Administration (Presidential leadership) is legally obligated to submit to Congress a request for the resources that the executive branch believes it will require in the coming Fiscal Year and to some extent future years, pursuant to the requirements of the Budget and Accounting Act of 1921 (as amended).

46. To the contrary, Defendants and the Obama Administration have very strongly, along with its predecessors to a less extreme extent, conducted a persistent, comprehensive, full

---

[3]      http://www.dhs.gov/deferred-action-childhood-arrivals

scale legal and political war against every effort to control the borders of the United States.

## CAUSES OF ACTION

47. For each of the Causes of Action set forth below, Plaintiff incorporates by reference, repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth in each of the Causes of Action stated below.

48. For each of the Causes of Action asking for Declaratory Judgment set forth below, the Plaintiff  relies upon 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and further asserts that under 28 U.S.C. § 2201, Declaratory Judgment under Federal law is available "whether or not further relief is or could be sought," and "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."   Moreover, Plaintiff asks the Court to declare the rights and other legal relations any interested parties.

49. For each of the Causes of Action asking for Declaratory Judgment set forth below, the controversy is within the jurisdiction of this Court under the U.S. Constitution.

## FIRST CAUSE OF ACTION
### *Declaratory Judgment Obama's Ultra Vires Under the U.S. Constitution*

50. Plaintiff respectfully asks the Court to enter Declaratory Judgment that Defendant Obama's DACA program and Executive Order Amnesty are unconstitutional as violating the role of the President of the United States and exceeding the President's constitutional authority under the U.S. Constitution.

51. There is an actual controversy as to whether the President may convey lawful presence status upon illegal aliens present within the country, including conferring benefits and employment authorization to work within the United States.

52. Defendant Obama and the other Defendants have no authority under the U.S. Constitution to decide immigration policy or who may enter the United States or be granted lawful presence status and/or naturalized other than the authority granted to various executive branch officials or the President by Congress.

53. The President is obligated to enforce the laws as written:

> Article II - The Executive Branch
>       * * *
> Section 3 - State of the Union, Convening Congress
> He shall … take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States.

54. The U.S. Constitution explicitly reserves to the Congress power to govern immigration:

> Article I - The Legislative Branch
>       * * *
> Section 8 - Powers of Congress
> The Congress shall have Power  * * *  To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

55. There is no other provision in the U.S. Constitution sharing any such power concerning immigration with the President.

56. The Supreme Court undertook a fundamental analysis of the constitutional architecture of the U.S. Constitution in *INS v. Chadha*, 462 U.S. 919 (1983).

57. Where a provision in legislation would normally be routinely accepted, the Supreme Court found in *Chadha* that the legislative veto of executive branch action violated the U.S. Constitution because it did violence to the constitutional architecture and structure.

58. The U.S. Constitution's structure is for Congress to legislate and the executive branch to implement.  The legislative veto violated that structure.

59. Here, DACA and EOA present the mirror image of *Chadha.*

60. Here it is Defendant Obama seeking to legislate in place of Congress.

61. DACA and EOA are unconstitutional in the same manner.


## SECOND CAUSE OF ACTION
### *Violation of Rule-Making Requirements*

62. Defendant Obama and the other Defendants are not engaging in individualized adjudication of illegal aliens one by one so as to involve prosecutorial discretion.  These programs are wholesale legislating, not retail adjudication.

63. Clearly, Defendant Obama and the other Defendants are engaged in rule-making with regard to broad, sweeping categories, including exercising legislative power either delegated to the executive branch or usurped by the executive branch, establishing a new status of immigrant presence in the United States, and establishing a new regulatory scheme.

64. At a minimum, Defendant Obama and the other Defendants are changing the definition of key terms from what the definitions previously were under existing regulations.

65. Defendant Obama and the other Defendants are establishing broad regimes applying to millions of people by category, including grants of additional benefits – unnecessary to and outside of the purported purpose – as well as imposing intricate plans for requirements and eligibility.

66. Furthermore, DACA and Executive Order amnesty cover topics already covered by previously-promulgated regulations, but address those topics in radically different ways than existing regulations on the same topics (largely by altering the meaning of terms).

67. Therefore, these programs are a significant departure from existing regulations.

68. As a result, the Defendants must comply with the rule-making procedures imposed by the Administrative Procedures Act (APA).

**THIRD CAUSE OF ACTION**
*Violation of Existing Regulatory Authority*

69. Plaintiff challenges Defendant Obama and the other Defendant's DACA and Executive Order amnesty as illegal, unconstitutional, and invalid agency action pursuant to 5 U.S.C. §§ 702 through 5 U.S.C. §§ 706.

70. Specifically, Plaintiff moves the Court to enjoin the Attorney General, the Secretary of Homeland Security, and the Director of the Citizenship and Immigration Services (USCIS) from implementing DACA and Defendant Obama's new program to be implemented which Plaintiff refers to as "Executive Order Amnesty."

71. Plaintiff is aggrieved by the invalid, illegal, and unconstitutional agency actions as set forth in Section IV (C), above.

72. Defendant Obama and the other Defendant's programs violate the requirements of the APA because the reversal of the executive branch's positions in conflict with existing regulations and law is necessarily arbitrary, capricious, arbitrary, an abuse of discretion, unreasonable, and otherwise not in accordance with law.

73. That is, if the previously promulgated regulations were well grounded in law and fact, then a dramatic departure from those regulations most likely cannot also be well grounded in law and fact.

## FOURTH CAUSE OF ACTION
### *Declaratory Judgment: Conveying Work Authorization Irrational*

74. Plaintiff respectfully asks the Court to enter Declaratory Judgment that the executive branch granting authorization to work in the United States as part of DACA and Executive Order Amnesty are unconstitutional as failing the rational basis test for the exercise of delegated authority in administrative law.

75. There is an actual controversy as to whether there is any rational basis for the executive branch to grant employment authorization to work within the United States as part of granting amnesty or deferred removal of illegal aliens.

76. Defendant Obama and the other Defendants' justification for granting amnesty is that the amount of resources and effort it would take to track down and deport illegal aliens is excessive.

77. However , not granting work permits would encourage many illegal aliens to voluntarily return home if they find it difficult to find employment in the United States.

78. Even if there were legal or constitutional validity to Defendant Obama deferring deportation of illegal aliens, there is no rational basis to grant them work permits also.

## FIFTH CAUSE OF ACTION
### *Declaratory Judgment: Prosecutorial Discretion is Individualized not Categorical*

79. Plaintiff respectfully asks the Court to enter Declaratory Judgment that a President may not grant amnesty to illegal aliens on the grounds of prosecutorial discretion.

80. There is an actual controversy as to whether the President may grant amnesty to broad categories of illegal aliens as a purported exercise of prosecutorial discretion.

81. Prosecutorial discretion involves and requires an individualized weighing of the merits of a particular case, such as the availability of witnesses and evidence, the credibility of witnesses, the willingness of witnesses to testify, and the likelihood that an exercise of prosecutorial discretion will lead to rehabilitation and not recidivism.

82. By contrast, decisions made with regard to broad categories are legislative.

83. Prosecutorial discretion applies to adjudicatory decisions.

84. By contrast, Defendant Obama and the other Defendant's grant of amnesty to broad categories of illegal aliens is not an adjudicatory proceeding to which prosecutorial discretion applies.

**SIXTH CAUSE OF ACTION**
***Violation of Non-Delegation Doctrine***

85. The exercise of the executive branch's discretionary decision-making authority in creating DACA and the new EOA violates the nondelegation doctrine confirmed by this Circuit in *American Trucking Associations, Inc. v. United States Environmental Protection Agency*, 175 F.3d 1027 (D.C. Cir. 1999), *modified on reh'g by* 195 F.3d 4 (D.C. Cir. 1999), *modified by Michigan v. United States EPA*, 213 F.3d 663 (D.C. Cir. 2000) (limiting the scope of *American Trucking*, stating "[w]here the scope increases to immense proportions … the standards must be correspondingly more precise") (citations omitted) *cert. granted sub nom. American Trucking Ass'ns, Inc. v. Browner*, 120 S. Ct. 2193 (2000).

86. "The United States Constitution grants the legislative power exclusively to Congress, not to the President, courts, or governmental agencies.  Nonetheless, the Supreme Court has

long recognized that Congress may delegate legislative power to governmental agencies, provided that the legislative act limits the delegated power and provides a standard to guide the agency's actions.  Thus, agencies are not creating law, they are executing the law within specific parameters in accordance with legislative intent." [4]

87. However, an exercise of agency discretion within the statute must be based upon an "intelligible principle" grounded in the Congressional enactment, not merely the preference of the agency.

88. The sweeping power claimed by Defendant Obama and the other Defendants is an unlimited, unbridled power without the guidance of any intelligible principle guiding the exercise of the delegated power.

**PRAYER FOR RELIEF**

With regard to all counts, Plaintiff respectfully demands that the Court with regard to each and every Defendant: (1) Enter a preliminary restraining order until such time as the Court can hold a hearing to halt implementation of the Deferred Action for Childhood Arrivals (DACA) program and the President's new Executive Order Amnesty, because it will cause irreversible harm by encouraging more illegal aliens to enter the country unlawfully because of news of amnesty, inducing illegal aliens in the country to alter their circumstances in reliance on the amnesty programs, and creating new relationships and circumstances difficult to unravel if the amnesty programs are found to be unlawful, as it will result in the release of more criminal aliens onto the streets of Maricopa County and the United States as a whole; (2) Enter a preliminary injunction to halt implementation until the Court can hear all parties and enter a decision on a preliminary injunction; and (3) Enter a permanent injunction declaring the amnesty

---

[4]        "Delegation and Discretion:  Structuring Environmental Law to Protect the Environment," Michael N. Schmidt,  *J. LAND USE & ENVTL. L. , 111, 112*

programs to be unlawful, as well award such other forms of equitable relief as may be appropriate, and such other relief the Court may deem just and proper.

**This prayer for relief does not request legal authority for Plaintiff Arpaio to enforce the immigration laws of the United States, as current legal precedent has found that he and other similarly situated state law enforcement and other officials have no authority to do so.**


Dated: November 20, 2014                           Respectfully submitted,

                                                    */s/ Larry Klayman*
                                                    Larry Klayman, Esq.
                                                    Washington, D.C. Bar No. 334581
                                                    Freedom Watch, Inc.
                                                    2020 Pennsylvania Avenue N.W. , Suite 345
                                                    Washington, D.C. 20006
                                                    (310) 595-0800
                                                    leklayman@gmail.com
                                                    Attorney for Plaintiff