**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH ARPAIO,

                 Plaintiff,

    v.

BARACK OBAMA, ET AL.                             Case 1:14-cv-01966

                 Defendants.

## PLAINTIFF'S STATEMENT ON BRIEFING SCHEDULING OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, pursuant to the Court's Order of December 4, 2014, hereby files this statement. U.S. District Judge Beryl A. Howell ordered that the Plaintiff consult with the Defendants' counsel and develop and file by this next Tuesday, December 9, 2014, by 5:00 PM a "joint proposed schedule to govern the preliminary injunction proceedings."

The parties have not reached agreement as to the timetable for briefing and hearing Plaintiff's Motion for Preliminary Injunction.

Pursuant to Local Rule 65.1, a hearing is to be held 21 days from the date of filing, which was last Thursday, December 4th.

The Plaintiff proposes to have Defendants file their Opposition to the Plaintiff's Motion for Preliminary Injunction within 7 days, that is on or before December 15, and then for Plaintiff to file his reply 7 days later on or before December 22.

Plaintiff's position is buttressed by the fact that the Defendants obviously have already extensively reviewed and analyzed their view of the law and precedents.  On November 20,

2014, the Office of Legal Counsel of the U.S. Department of Justice released its 33 page legal memorandum for the U.S. Department of Homeland Security.

Therefore, the Plaintiff does not accept that more time is needed because the Defendants have not only evidenced but publicly boasted that they have extensively examined these issues legally.  Plaintiff, by counsel, contends that the Defendant is merely delaying, much as it did before Judge Leon in the case against the National Security Agency ("NSA") brought by Larry Klayman and Freedom Watch in 2013. In that case when the U.S. Department of Justice asked for an equally long and unreasonable briefing schedule on a motion for preliminary injunction, here is what Judge Leon had to say: "[w]e work 24/7 around this courthouse. I don't want to hear anything about vacations, weddings, days off. Forget about it. This is a case at the pinnacle of public national interest, pinnacle. All hands 24/7. No excuses. You got a team of lawyers. Mr. Klayman is alone apparently. You have litigated cases in this courthouse when it is matters of this consequence and enormity. You know how this Court operates." Transcript of Oct. 31, 2013.

This case is of equal national importance to the lawsuit against the NSA. *See Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013). However, Defendants assert that no rapid action is required by this Court because the Defendants' executive action programs do not take immediate effect.

On the contrary, Plaintiff contends that the Defendants' executive actions[1] do take immediate effect and that immediate action is required.  In consultation, the Defendants' counsel Adam Kirschner, Esq., at the U.S. Department of Justice, requested that Plaintiff include the

---

[1]      Unlike the Defendants' June 15, 2012, "Deferred Action for Childhood Arrivals" (DACA), the Executive Branch has not given a name as convenient to its bundle of actions begun on November 20, 2014, except to refer to it as "executive action."  The Complaint attempts to refer to these programs begun November 20, 2014, as "Executive Order Amnesty," although it has subsequently emerged that President Barack Obama did not issue a formal, official Executive Order.

Defendants statement is as follows:

**Defendants' Position**[2]

Defendants seek to have up to and including January 14, 2015, to respond to Plaintiff's motion for a preliminary injunction.  Given the significance of the issues presented, the length of Plaintiff's filings, the multiple claims presented, and the need for significant inter-agency coordination, this timeline is warranted to allow Defendants to respond to Plaintiff's motion.  In addition to the various arguments Plaintiff presents in his motion that will have to be addressed in the Defendants' opposition, Defendants will also need to address the significant jurisdictional issues raised by Plaintiff's lawsuit, including his lack of Article III standing.  This timeline is also warranted because it will be particularly difficult to address the array of issues presented on a condensed schedule in light of the upcoming holidays.

In contrast, Plaintiff will not be prejudiced by this timeline for briefing the motion for preliminary injunction.  Plaintiff seeks to enjoin the Department of Homeland Security's continuing exercise of prosecutorial discretion through deferred action on a case-by-case basis with respect to certain individuals who came to the United States as children ("DACA") and certain individuals who are the parents of U.S. citizens or lawful permanent residents ("DAPA").  But DACA was announced on June 15, 2012.  Plaintiff has waited two and a half years to bring this lawsuit.

As for DAPA and revised DACA that were announced on November 20, 2014, these will not go into material effect for several months.  U.S. Citizenship and Immigration Services

---

[2]     Plaintiff and Defendants' counsel have conferred and Defendants reserve the right to supplement this pleading. The reason for this is that Defendants forwarded their above position only this morning and in order to meet the five o'clock deadline, Plaintiff's counsel is compelled to file this pleading at this time, as he was scheduled to be out of the office during the hour proceeding five o'clock. Plaintiff's counsel did share the substance of his position with Defendants' counsel prior to filing this pleading.

("USCIS") is not required to begin accepting requests for consideration for deferred action under the revised DACA guidelines until February 18, 2015 and under DAPA until May 19, 2015, and it will not entertain any such requests until those dates.  *Cf.* Mem. from Jeh Johnson, Secretary, Dep't of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S Citizens or Permanent Residents* (Nov. 20, 2014) (attached as Ex. D to Plaintiff's Motion for Prelim. Inj. (Dkt. #6-4) (providing that USCIS "should begin accepting applications" from applicants eligible for consideration under the revised DACA standards no later than 90 days from November 20, 2014 and 180 days with respect to DAPA); *see also* http://www.uscis.gov/immigrationaction (last visited December 8, 2014).

Even after USCIS begins entertaining requests under the new policy guidelines, it will still be some time thereafter before final decisions would be made on any applications that are submitted.  For example, under the existing DACA program, the general timeframe for USCIS services centers to process and adjudicate a request, assuming there is no backlog, is six months.[3]

Further, there is no need for an expedited schedule simply based on Plaintiff's expressed concerns about whether individuals who may later be eligible for deferred action would not be subject to removal prior to receiving deferred action.  Again, DACA has existed for two and a half years.  And prior to DACA, the Department of Homeland Security has had a long history of issuing guidance to prioritize the enforcement of the immigration laws against certain categories

---

[3] *See* https://egov.uscis.gov/cris/processTimesDisplayInit.do (last visited December 6, 2014) (providing adjudication times for USCIS applications, including DACA requests).  To access relevant data, select "Service Center Processing Dates" for the various service centers and look for the processing timeline listed for "Consideration of Deferred Action for Childhood Arrivals – Request for Deferred Action."  Where a date is listed rather than a processing timeline, as for the Texas Service Center, it indicates that the service center is experiencing delays in meeting the processing timeline.  *See id.*

of undocumented aliens.  In fact, those eligible for deferred action under DACA and DAPA must have resided in this country for the previous five years and thus the Department of Homeland Security has not deported these individuals during that time.

It is both unnecessary and unwarranted to require the United States to present its defense of the existing DACA guidance on an abbreviated schedule, when that guidance has been in place for more than two years; or to require the United States to present its defense of the recent and important policy guidance creating DAPA and expanding eligibility for DACA well before the date that requests under the new eligibility guidelines established by the policy will be accepted and could even be considered.

**Plaintiff's Position**

In reply, the Plaintiff's present the following contrary position in support of their timetable request for the briefing and hearing on the motion for preliminary injunction:

*First*, Secretary Jeh Johnson's several Memoranda issued November 20, 2014, are orders issued to the U.S. Department of Homeland Security having immediate effects.  There is no limitation in the Memoranda as to the orders by the Secretary to Departmental employees and officials being implemented in the future rather than immediately.  Quite obviously, implementation would be expected to take some time.  But the legal force of the Memoranda is immediate and would require the Department of Homeland Security (DHS) to begin implementation immediately.

The only mention of timing in the Memoranda is that the Secretary directs the United States Citizenship and Immigration Service  (USCIS)[4] to begin accepting applications from

---

[4]    The successor to the old INS (Immigration and Naturalization Services) although parts of INS were split off into the Immigration and Customs Enforcement (ICE) Service.  These changes

nationals of foreign countries illegally present in the United States within 180 days of the

November 20, 2014, Memoranda. [5]

To begin accepting applications no later than 180 days from November 20, 2014, perhaps

sooner but not later than 180 days in any event, DHS and USCIS in particular would be expected

to begin preparations immediately.

As an admission by a party-opponent, USCIS states on its website on the topic: [6]

> *Next steps*
>
> USCIS and other agencies and offices are responsible for implementing
> these initiatives as soon as possible. Some initiatives will be implemented
> over the next several months and some will take longer.

*Second*, the Memoranda orders direct DHS personnel including the Customs and Border

Protection (CBP) and ICE to *immediately* suspend enforcement of immigration laws with regard

to any who appear to be eligible for the new deferred action programs, even though such persons

might not yet be able to apply for formal recognition.  The main Memoranda further states:

> . . .  As with DACA, the above criteria are to be considered for all
> individuals encountered by U.S. Immigration and Customs
> Enforcement (ICE), U.S. Customs and Border Protection (CBP), or
> USCIS, whether or not the individual is already in removal proceedings
> or subject to a final order of removal. Specifically:
>
> •     ICE and CBP are instructed to immediately begin identifying
> persons in their custody, as well as newly encountered individuals, who
> meet the above criteria and may thus be eligible for deferred action to

---

occurred during the creation of the Department of Homeland Security and associated
reorganization, restructuring, and transfer of various components from other Departments.
[5]     See Page 5 of Secretary Jeh Johnson's November 20, 2014, Memorandum Order titled
*"Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States
as Children and with Respect to Certain Individuals Who are the Parents of U.S. Citizens or
Permanent Residents"* to the USCIS, ICE, Customs and Border Protection (CBP), and Acting
Assistant Secretary for Policy Alan D. Bersin, a copy of which downloaded from the
Department's website and is attached as Exhibit D to the Motion for Preliminary Injunction.
[6]     http://www.uscis.gov/immigrationaction

prevent the further expenditure of enforcement resources with regard to these individuals.

•   ICE is further instructed to review pending removal cases, and seek administrative closure or termination of the cases of individuals identified who meet the above criteria, and to refer such individuals to USCIS for case-by-case determinations. ICE should also establish a process to allow individuals in removal proceedings to identify themselves as candidates for deferred action.

•   USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear. The USCIS process shall also be available to individuals subject to final orders of removal who otherwise meet the above criteria.

Under any of the proposals outlined above, immigration officers will be provided with specific eligibility criteria for deferred action, but the ultimate judgment as to whether an immigrant is granted deferred action will be determined on a case-by-case basis. [7]

*Third*, the Defendants reportedly have already leased office workspace in Crystal City (Arlington, Virginia) for 1,000 new DHS workers to process the roughly 5 million applications expected.[8]  The Government will be immediately spending money on these programs.   The constitutionality and legality of these programs should be decided first.

Similarly, the Washington Times is reporting that the Obama Administration has already posted job openings – formal requests for applications – for 1,000 new government workers with salaries up to $157,000 per year to process amnesty requests for approximately 6 million illegal aliens.  DHS has already leased space in Arlington, Virginia, for these 1,000 new bureaucrats to do their work processing applications.

It should be noted as an aside that these plans put the lie to DHS' claims to prosecutorial

---

[7]   *Id.* Page 5
[8]   "**Homeland Security already hiring 1,000 employees to carry out Obama amnesty,**" by Stephen Dinan, The Washington Times, December 3, 2014, http://www.washingtontimes.com/news/2014/dec/3/dhs-hiring-1000-employees-carry-out-obama-amnesty/

discretion.  DHS is hiring temporary workers to process the deferred action applications.  These are not experienced nor even permanent officials or employees of the Department.  Clearly these temporary hires processing paperwork are not going to be making professional case-by-case decisions about deferred action applicants based on the specialized expertise of the Department, but are simply going to rubber stamp and approve all applications that present the required paperwork and meet a checklist of the criteria announced in the Memoranda.

However, government resources may be wasted if the programs proceed but are later found to be invalid legally or unconstitutional.  By contrast if the implementation is simply delayed until a court decision, there will be no such harm.

_Fourth_, the November 20, 2014, "Executive Action" or "Executive Order Amnesty" creates an immediate magnet for millions more of illegal aliens to rush the border.  If a preliminary injunction is warranted, the sooner it is issued, the better the signal to nationals of foreign countries not to rush our nation's borders.  News reporting in other parts of the world will reflect an imperfect understanding of U.S. law and politics.  Those who do not qualify for the Obama Administration's policies and programs have nevertheless been encouraged by imprecise reporting in their own countries in Spanish, Arabic, Farsi, or other languages where they reside.

America witnessed the tragedy and the shock as thousands of "unaccompanied minors" rushed across the nation's southern border shared with Mexico in the Summer of 2014.  Some of these "unaccompanied minors" were middle-aged men with gray hair claiming to be 17 years old without identity documents, some intact families but misreported among the news, but some children as young as four (4) years old.  Young men and middle-aged men – lacking any documentation but claiming to be 17 years old – were placed in high schools next to 16 and 17

year old girls.

Children distributed throughout the country have widely scattered an epidemic of Enterovirus D68 and most likely hepatitis not being fully reported.  While health care is often worse, at least for the poor, in Mexico and South America, DHS caused much of this problem by concentrating arrivals cooped up in detention centers, so that if only one person was infected many others would catch a disease incubated in DHS centers, before quickly distributing these arrivals nationwide prior to completing effective quarantine periods to watch for disease.

Now, in like fashion, a further wave of illegal aliens will begin flooding across the Mexican desert as weather warms up.  Unfortunately, thousands of those people will die in the desert and other wilderness and/or be mistreated or raped along the way.  We may never know how many bodies are strewn in the wilderness.  Believing that anyone who touches U.S. soil will be granted a job and eventually U.S. citizenship, more illegal aliens will immediately start to arrive.  This is especially true because the Obama and Bush Administrations did not build the border fence mandated by the Border Fence Act of 2006.

*Fifth*, by Memorandum dated June 15, 2012, Secretary of Homeland Security Janet Napolitano issued guidance entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children,* a copy of which is attached as Exhibit A to the Motion for Preliminary Injunction, addressed to U.S. Customs and Border Protection (CBP), U.S. Citizenship and Immigration Services (USCIS), and U.S. Immigration and Customs Enforcement (ICE).

Approximately 611,953 [9] illegal aliens, mostly in their thirties, have received DACA

---

[9]

http://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/I821d_daca_fy2014qtr2.pdf

status and Employment Authorization Cards (work permits) already.  In candor to the Court, the

legal criteria for a preliminary injunction apply more weakly to those who are already holding

deferred action and work authorization under DACA.  The Court could issue a preliminary

injunction with regard to those who have already received DACA status, unlawfully the Plaintiff

believes.  But in candor the threshold would be higher for those already holding DACA status.

Nevertheless, the Department of Homeland Security should be ordered to stop issuing

any new DACA amnesty or work permits or renewing DACA status and Employment

Authorization Cards until the Court can analyze, review, and decide upon whether DACA status

is legally valid and constitutional.

### CONCLUSION

For the foregoing reasons, in accordance with Local Rule 65.1 and this Court's Order of

December 4, 2014, the Court should respectfully expedite the timetable for briefing, hearing,

and decision upon the Plaintiff's Motion for Preliminary Injunction.

Dated: December 9, 2014                          Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Washington, D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W., Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of December, 2014 a true and correct copy of the foregoing Motion for Preliminary Injunction was served upon the following:


Adam Kirschner
Trial Attorney, Civil Division
U.S. Department of Justice
20 Massachusetts Ave., N.W.,
Room 7126 Room 7126
Washington, D.C. 20530
Tel: (202) 353-9265
Fax: (202) 616-8470
E-Mail: Adam.Kirschner@usdoj.gov


Bradley H. Cohen
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 305-9855
Facsimile: (202) 616-8202
E-mail: bradley.cohen@usdoj.gov


Respectfully Submitted,


*/s/ Larry Klayman*
Larry Klayman, Esq.
Washington, D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W., Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

*Attorney for Plaintiff*