EXHIBIT 12

CO 241.11-P

TO      : Commissioner

DATE: 15 JUL 1976

FROM  : Sam Bernsen
        General Counsel

SUBJECT: Legal Opinion Regarding Service Exercise of Prosecutorial Discretion

You have asked for my opinion regarding the authority of the Service to exercise prosecutorial discretion in administrative proceedings arising under the Immigration and Nationality Act. You have also asked for my opinion regarding the appropriate time and manner for the exercise of such discretion.

Prosecutorial discretion refers to the power of a law enforcement official to decide whether or not to commence or proceed with action against a possible law violator. See generally, K. Davis, Administrative Law Treatise, 1970 Supp., §4.08, at 188. This power is not restricted to those termed prosecutors, but is also exercised by others with law enforcement functions such as police and officials of various administrative agencies. 1/   The power extends to both civil and criminal cases. 38 Op. Att'y Gen. 98, 102 (1934)

The reasons for the exercise of prosecutorial discretion are both practical and humanitarian. There simply are not enough resources to enforce all of the rules and regulations presently on the books. As a practical matter, therefore, law enforcement officials have to make policy choices as to the most effective and desirable way in which to deploy their limited resources. Thus, for example, police and prosecutors may choose to concentrate on apprehension and prosecution of perpetrators of violent crimes, while choosing not to proceed against those committing so-called "victimless crimes," such as certain consensual sex acts and possession of small amounts of marihuana. In addition, there are times when defects in the quality, quantity, or method of gathering evidence will make it difficult to prove the matter before a court.

Aside from purely practical considerations, it is also obvious that in enacting a statute the legislature cannot possibly contemplate all of the possible circumstances in which the statute may be applied. In some situations, application of the literal letter of the law would simply be unconscionable and would serve no useful purpose. For instance, a prosecutor may well decide not to proceed against a terminally ill individual, even in the presence of overwhelming evidence of guilt.

1/  See e.g., NLRB v. Sands, 306 U.S. 171, 182 (1939) (General Counsel of NLRB has unreviewable discretion to refuse to institute unfair labor practice complaint).

*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

-2-

### General Authority of Executive Branch

The ultimate source for the exercise of prosecutorial discretion in the Federal Government is the power of the President. Under Article II, Section 1 of the Constitution, the executive power is vested in the President. Article II, Section 3, states that the President "shall take care that the laws be faithfully executed."

Most discussions of the exercise of prosecutorial discretion on the federal level center on the Attorney General, since he is the chief legal officer of the Federal Government. Nevertheless, prosecutorial discretion is also exercised by a wide variety of other government officials with law-enforcement responsibilities. 2/

The Attorney General has the authority "to determine when the United States shall sue, to decide for what it shall sue, and to be responsible that such suits shall be brought in appropriate cases." U.S. v. San Jacinto Tin Co., 125 U.S. 273, 279 (1888). The power of the Attorney General to exercise his prosecutorial discretion does not end with the entry of judgment, but also embraces execution of the judgment. U.S. v. Morris, 23 U.S. (10 Wheat.) 246 (1825); 38 Op. Att'y Gen. 98, 102 (1934).

In a 1934 opinion, Attorney General Cummings pointed to three sources for the Attorney General's exercise of prosecutorial discretion: (1) inherent authority, (2) court decisions, and (3) various statutory enactments. 38 Op. Att'y Gen. 98 (1934). 3/

The inherent authority can be traced to the common law, where a prosecuting attorney had authority to terminate a suit at any time. See Confiscation Cases, 74 U.S. (7 Wall.) 454 (1868). As Attorney General Taney stated in 2 Op. Att'y Gen. 482, 486 (1831):

> An attorney conducting a suit for a party has, in the absence of
> that party, a right to discontinue it whenever, in his judgment,
> the interest of his client requires it to be done. If he abuses
> this power, he is liable to the client whom he injures.... An
> attorney of the United States, except in so far as his power may
> be restrained by particular acts of Congress, has the same au-
> thority and control over the suits which he is conducting.

---

2/ Id.

3/ See also 2 Op. Att'y Gen. 482, 486 (1831); 22 Op. Att'y Gen. 491, 494 (1899); 23 Op. Att'y Gen. 507, 508-09 (1901). See generally Schwartz, Federal Criminal Jurisdiction and Prosecutors Discretion, 13 Law & Contemp. Prob. 64 (1948).

-3-

Numerous Supreme Court decisions have confirmed the power of the Attorney General to exercise his discretion in the institution, control, and settlement of suits in behalf of the United States. See e.g., Confiscation Cases, supra; U.S. v. San Jacinto Tin Co., supra; U.S. v. Throckmorton, 98 U.S. 61, 70 (1878); In re Neagle, 135 U.S. 1, 67 (1890); New York v. New Jersey, 256 U.S. 296, 308 (1921); Kern River Co. v. U.S., 257 U.S. 147, 155 (1921); Ponzi v. Fessenden, 258 U.S. 254, 262 (1922); Petite v. U.S., 361 U.S. 529 (1960). 4/

There is also a long line of lower court cases recognizing this authority. See e.g., U.S. v. Alessio, 528 F.2d 1079 (9 Cir. 1976); U.S. v. Cawley, 481 F.2d 702 (5 Cir. 1973); Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375, 379 (2 Cir. 1973); U.S. v. Kysar, 459 F.2d 422, 424 (10 Cir. 1972); Spillman v. U.S., 413 F.2d 527, 530 (9 Cir. 1969); Newman v. U.S., 382 F.2d 479 (D.C. Cir. 1967); U.S. v. Cox, 342 F.2d 167 (5 Cir. 1965), cert. denied, Cox v. Hauberg, 381 U.S. 935 (1965); Goldberg v. Hoffman, 225 F.2d 463 (7 Cir. 1955); District of Columbia v. Buckley, 128 F.2d 17, 20-21 (D.C. Cir. 1942); Pugach v. Klein, 193 F. Supp. 630, 635 (S.D.N.Y. 1961); U.S. v. Woody, 2 F.2d 263 (D. Mont. 1924).

A final source for the Attorney General's authority to exercise prosecutorial discretion can be found in the various statutes creating his office and conferring upon him the power to supervise and conduct the litigation and other legal affairs of the United States. 28 U.S.C. §§515-519, 547; Judiciary Act of 1789, Ch. 20, §35, 1 Stat. 92; Act of June 22, 1870, Ch. 150, 16 Stat. 162.

Most of the aforementioned federal cases dealing with prosecutorial discretion state that the power of the executive authorities is plenary and may not be reviewed by the judiciary. Nevertheless, dicta in several court decisions has indicated that selective prosecution based upon certain suspect classifications may violate the Constitution. 5/ Courts have also indicated that they will not tolerate an arbitrary exercise of prosecutorial discretion by an ad-

4/   See also Oyler v. Boles, 368 U.S. 448 (1962) (selective prosecution by state authorities not a violation of constitutional rights where not based upon unjustifiable standard); Linda R.S. v. Richard D., 410 U.S. 614 (1973) (private party has no standing to compel prosecution by state authorities).

5/   Oyler v. Boles, supra at note 4 (selection not based on unjustifiable standard such as race, religion, or other arbitrary classification); Nader v. Saxbe, 497 F.2d 676, 679 n. 19 (D.C. Cir. 1974) (exercise of prosecutorial discretion, like any other exercise of executive discretion, subject to statutory and constitutional limits enforceable through judicial review); U.S. v. Sacco, 428 F.2d 264, 271 (9 Cir. 1970), cert. denied, 400 U.S. 903 (1970) (selective prosecution not a constitutional violation where no allegation that it was based on constitutionally suspect classification).

-4-

ministrative agency. 6/

### Prosecutorial Discretion in Immigration Cases

It has been pointed out that prosecutorial discretion may be exercised in administrative, as well as criminal contexts. 7/   One of the earliest manifestations of prosecutorial discretion in an immigration-related field is Department of Justice Circular Letter Number 107, dated September 20, 1909, dealing with the institution of proceedings to cancel naturalization.  That letter states:

> In the opinion of the department, as a general rule, good cause is not shown for the institution of proceedings to cancel certificates of naturalization alleged to have been fraudulently or illegally procured unless some substantial results are to be achieved thereby in the way of betterment of the citizenship of the country.

This policy still governs denaturalization cases.  See Interp. 340.1(f).

The Attorney General has exercised prosecutorial discretion in the immigration area in the cases of aliens deportable under §241(a)(4) of the Immigration and Nationality Act who are eligible to receive state court expungements at a future date.  In a letter to the Commissioner of Immigration, dated January 17, 1961, Attorney General Rogers stated that the Service should "withhold or terminate proceedings under section 241(a)(4) of the Immigration and Nationality Act in the cases of youthful offenders who are eligible for an honorable discharge from the control of the California Youth Authority."

---

6/ Moog Industries, Inc. v. F.T.C., 355 U.S. 411 (1958) and F.T.C. v. Universal Rundle Corp., 387 U.S. 244, 251 (1967) (FTC does not have unbridled power to institute proceedings that will arbitrarily destroy one of many law violators in an industry);  Lennon v. INS, 527 F.2d 187, 195 (2 Cir. 1975) (dictum) (courts will not condone selective prosecution based upon secret political grounds);  Lennon v. United States, 387 F. Supp. 651, 564 (S.D.N.Y. 1975) (Government cannot institute deportation proceedings solely as penalty for exercise of constitutional rights).  See also U.S. v. Berrios, 501 F.2d 1207, 1209 (2 Cir. 1974).  See generally K. Davis, Administrative Law Treatise §28.16, at 982 (1958); Note, Reviewability of Prosecutorial Discretion: Failure to Prosecute, 75 Colum. L. Rev. 130 (1975).

7/ See e.g., Vaca v. Sipes, supra note 1.  See also Bachowski v. Brennan, 502 F.2d 79, 87 (3 Cir. 1974), reversed on other grounds, Dunlop v. Bachowski, 421 U.S. 560 (1975), where the court stated that prosecutorial discretion could be exercised in administrative contexts, "which, like criminal prosecutions, involve the vindication of societal or governmental interest, rather than the protection of individual rights."

-5-

Numerous administrative decisions have affirmed the power of Service officers to exercise prosecutorial discretion. For instance, in Matter of Vizcarra-Delgadillo, 13 I&N Dec. 51, 53 (BIA 1968), the Board of Immigration Appeals upheld the authority of the District Director to move that proceedings be terminated as improvidently begun. The Board commented on the nature of the District Director's authority:

> Those charged with responsibility for enforcing the criminal laws have prosecutive discretion in determining whether to initiate criminal prosecution in a given case. A similar discretion not to proceed in a given case must be accorded to those responsible for immigration law enforcement. And where, following the formal start of deportation proceedings, additional facts or policy considerations arise which lead those responsible to conclude that this is not the sort of case in which such proceedings should have been started in the first place, 8 CFR 242.7 wisely provides the mechanics for termination on the ground that the proceeding was "improvidently begun." (Footnotes omitted)

Another case, Matter of Andrade, I.D. 2276 (BIA 1964), dealt with a minor who had been convicted of a marihuana violation which was expunged under a state law comparable to the Federal Youth Corrections Act. An order of deportation was initially entered. Thereafter, however, in connection with a petition for certiorari filed in the United States Supreme Court, the Solicitor General urged the Service to reconsider its policy with respect to such expungements and to administratively set aside the order of deportation. In response to this suggestion, the Service moved for termination of the deportation proceedings. The Board granted the Service's motion stating that, "the Service's determination not to initiate or press deportation proceedings in a given case or class of cases is a matter of prosecutorial judgment which we do not review."

Many other administrative decisions recognize and affirm the Service's power to exercise prosecutorial discretion. See e.g., Matter of Geronimo, 13 I&N Dec. 680 (BIA 1971); Matter of Wong, 13 I&N Dec. 701 (BIA 1971); Matter of Gallares, I.D. 2177 (BIA 1972); Matter of Merced, I.D. 2273 (BIA 1974), aff'd per curiam Merced v. INS, 514 F.2d 1070 (5 Cir. 1975); Matter of Lennon, I.D. 2304 (BIA 1974), rev'd on other grounds, Lennon v. INS, 527 F.2d 187 (2 Cir. 1975). See also Matter of Anaya, I.D. 2243 (BIA 1973), aff'd per curiam, Anaya v. INS, 500 F.2d 574 (5 Cir. 1974); Matter of Felix, I.D. 2149 (BIA 1972). See also Roberts, The Exercise of Administrative Discretion Under the Immigration Laws, 13 San Diego L. Rev. 144, 149-52 (1975).

The Service's power to exercise prosecutorial discretion is inherent in the nature of its enforcement function and does not depend upon any specific provision of the Immigration and Nationality Act. The Service has nevertheless promulgated regulations and operations instructions dealing with the exercise of prosecutorial discretion.

-6-

8 CFR 242.7(a) sets forth the authority of the District Director to cancel or move for cancellation of deportation proceedings if "he is satisfied that the respondent is actually a national of the United States, or is not deportable under the immigration laws, or is deceased, or is not in the United States, or that the proceeding was improvidently begun." (underscoring supplied).

It is obvious that the "improvidently begun" ground is in addition to the "not deportable" ground and includes individuals who are deportable, but whose departure the Service, for policy or humanitarian reasons, does not choose to enforce. Operations Instruction 103.1(c)(1)(ii) lists various factors to be considered in determining whether to place an alien in the "deferred action" (formerly "nonpriority") category, meaning that deportation proceedings will not be instituted or continued against the alien. 8/

In addition to the discretion not to institute deportation proceedings, prosecutorial discretion may be exercised in connection with various other discretionary remedies, such as voluntary departure, 9/ and stays of deportation. 10/

Courts have acknowledged that a determination whether or not to enforce a deportable alien's departure in a particular case is normally within the sound discretion of the Service officer having responsibility over the case. See e.g., Balanos v. Kiley, 509 F.2d 1023 (2 Cir. 1975); Vassiliou v. INS, 461 F.2d 1193 (10 Cir. 1972); Spata v. INS, 442 F.2d 1013 (2 Cir. 1971), cert. denied, 404 U.S. 857 (1971); Armstrong v. INS, 445 F.2d 1395 (9 Cir. 1971); Bowes v. District Director, 443 F.2d 30 (9 Cir. 1971); Nanantan v. INS, 425 F.2d 693 (7 Cir. 1970); Discaya v. INS, 339 F. Supp. 1034 (N.D. Ill. 1972). See also Pignatello v. Attorney General, 350 F.2d 719, 725 (2 Cir. 1965). However, in Lennon v. U.S., 387 F. Supp. 561 (S.D.N.Y. 1975), the court indicated that a claim of selective deportation presents a proper issue for judicial review, and in Lennon v. INS, 527 F.2d 187, 195 (2 Cir. 1975), the court indicated in dictum that selective deportation based on political motives will not be tolerated. See also Lennon v. Richardson, 378 F. Supp. 39 (S.D.N.Y. 1974).

In Vergel v. INS, _____ F.2d _____, Civ. No. 75-1526 (8 Cir. June 2, 1976), the court sustained an order of deportation, but noted that there was a substantial

---

8/  See also Wildes, The Nonpriority Program of the Immigration and Naturalization Service - A Measure of the Attorney General's Concern for Aliens, (two parts) 53 Interpreter Releases 25, 33 (1976).

9/  8 CFR 244.1, 244.2. See Matter of Anaya, I.D. 2243 (BIA 1973), aff'd per curiam, 500 F.2d 574 (5 Cir. 1974); Matter of Felix, I.D. 2149 (BIA 1972)

10/  8 CFR 243.4.

-7-

basis for allowing the alien to remain in the United States in the "deferred
action category" under O.I. 103.1(a)(1)(ii).  The court stated that it would
be "appropriate for the District Director to make further inquiry to that end,"
and stayed its mandate for 90 days in order to allow the District Director to
consider the alien's claim.

In several other cases, courts have upheld deportation orders while suggesting
that the Service might appropriately exercise prosecutorial discretion to stay
execution of the orders.  See e.g., U.S. v. McAlister, 395 F.2d 852 (3 Cir.
1968); 11/ Liessi v. INS, Civ. No. 75-1393 (7 Cir. January 27, 1976), reversing
389 F. Supp. 12 (N.D. Ill. 1975); 12/ Dunn v. INS, Civ. No. 72-2186 (9 Cir.
February 20, 1974), cert. denied 419 U.S. 919 (1974). 13/

## Proper Time for Exercise

Normally the appropriate time for the exercise of prosecutorial discretion is
prior to the institution of proceedings.  The primary reason for this is the
humanitarian factor; it makes little sense to put an alien through the ordeal
and expense of a deportation proceeding when his actual removal will not be
sought.

In addition, there are practical considerations.  Deportation proceedings tie
up Government manpower and resources that could be used in performing other
important functions.  Given the present illegal alien problem such a use of
scarce resources on aliens whom the Service does not ultimately intend to
deport is indefensible.  Moreover, once a final administrative order of de-
portation is issued, the Service cannot prevent the alien from seeking
judicial review.  When a case with extremely appealing factors goes to court,
it may place the Service in an unfavorable light, both before the court and in
the forum of public opinion.

There are some situations, however, where prosecutorial discretion is properly
exercised after the institution or completion of deportation proceedings.  The
sympathetic or humanitarian factors may not arise or become apparent until
after the case has been started.  In other cases  involving aliens who may have
committed serious offenses but are allowed to remain on the representation that

11/  "Therefore, we think it would be appropriate for the Department to make
further inquiry to the end that, if justified, appellant's deportation at
least be stayed during his good behavior."

12/  "We agree...that this is a hardship case.  Therefore the Government should
afford petitioner any administrative remedy that may still be available...."

13/  "While this is a case in which the administrative discretion of the INS
might have been exercised with greater compassion the scope of our review in
this area is extremely narrow."

-8-

they are the sole support of United States citizen families, it may be
desirable to have a final order of deportation outstanding for immediate
execution in the event of any further misconduct.

### Conclusion

The power of various officers of the Executive Branch to exercise prosecutorial
discretion is inherent and does not depend on express statutory authorization.
Officers of the Service have been recognized as possessing such power, and pro-
vision for its exercise has been made in both the regulations and the opera-
tions instructions.

Although there is authority for the plenary nature of prosecutorial discretion,
the trend, especially in administrative contexts, is towards judicial review
of prosecutorial discretion to ascertain that it is not being exercised in a
way that would be constitutionally suspect or grossly unfair.  Consequently,
the Service's attempts to set forth some standards for the exercise of
prosecutorial discretion are particularly appropriate.

Finally, prosecutorial discretion may be exercised before, during, or after the
completion of deportation proceedings.  Normally, however, such discretion is
best exercised prior to the institution of proceedings.

CC:  W/F - Opinions of the General Counsel, 1976

CC:  CO 840-P

PWS:amb