# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH ARPAIO,

Plaintiff,

v.

BARACK OBAMA, ET AL.                                Case 1:14-cv-01966

Defendants.

## PLAINTIFF'S REQUEST FOR HIS LIVE TESTIMONY

Plaintiff, by counsel, requests that live testimony be scheduled and accepted into evidence, which is estimated to take approximately one hour as part of the hearing on Plaintiff's Motion for Preliminary Injunction currently scheduled for December 22, 2014.

## I.     GOVERNING LAW FOR LIVE TESTIMONY AT HEARING

Pursuant to Rule 65(1)(d) of the Local Rules of the U.S. District Court for the District of Columbia:

> …. The practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible. Accordingly, any party who wishes to offer live testimony or cross-examine an affiant at the hearing shall so request in writing 72 hours before the hearing and shall provide the court and all other parties a list of the witnesses to be examined and an estimate of the time required. The court may decline to hear witnesses at the hearing where the need for live testimony is outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. If practicable, the court shall notify all parties of its ruling on the request to adduce live testimony one business day before the hearing.

LCrR 65(1)(d).

## II.     TESTIMONY BY PLAINTIFF JOE ARPAIO CONCERNING STANDING AND HARM

Plaintiff Joseph Arpaio, as Sheriff of Maricopa County, Arizona, submitted his sworn affidavit that his office has observed and actually experienced increased financial costs, a drain on resources, additional workload, and greater risk of responding to a greater number of calls from criminal incidents which result directly or indirectly from repeated announcements and unconstitutional executive actions by President Obama and the other Defendants that he has in effect granted amnesty to millions of undocumented illegal aliens. In addition, Plaintiff Arpaio has received and continues to receive death threats from the illegal aliens that President Obama and the other Defendants have granted deferred action to. This directly harms Plaintiff Arpaio personally and in his official capacity.

Defendants seek to discredit Arpaio's affidavit by contending that:

- Arpaio's affidavit offers only conclusory statements.

- Arpaio's affidavit offers only speculative claims of harm.

- Arpaio has not alleged any specific injury.

- Arpaio has not identified how the injuries relate to Defendants' programs.

While these allegations are incorrect and simply strategic, Plaintiff Arpaio's testimony would be in the interest of due process and to further justice, as well as create a full record for this Court to confirm his standing to sue. Plaintiff Arpaio would also offer further testimony about the harm he and his office have suffered and will continue to suffer as a result of the unconstitutional executive actions at issue.

Plaintiff Arpaio would testify that:

- The financial impact of these illegal aliens in Maricopa County, Arizona, as illustrated in the email attached from Casey Price titled "Price Tag," incurred

2

increased expenses of $9,293,619.96 from February 1, 2014, through

December 17, 2014, for those inmates flagged with INS "detainers" (that is,

illegal aliens). (Exhibit 1).

- After years of experience with floods of illegal immigrants crossing the border into his jurisdiction as Sheriff, Plaintiff Arpaio has many years of empirical, real-world experience and evidence showing how the Defendants' executive actions will directly impact his operations. The Defendants' executive actions are straining his office resources as illegal aliens who have not committed serious crimes are not being will not be deported, but instead left to remain in jail.

- The DACA program which started June 15, 2012, has already impacted Arpaio's office finances, workload, resources, and exposure to more calls about criminal incidents.

- Arpaio's empirical evidence provides a solid predictive basis for what the impact will be from the November 20, 2014, executive actions. (Exhibit 1).

- The President's executive actions and claimed policies and statements over six years encouraging illegal aliens to come and seek the promised amnesty actually causes an increase in crime in Maricopa County, Arizona, including among those who lack any respect for U.S. laws.

- In addition, under current law, Plaintiff Arpaio will turn over those committing crimes in Maricopa County, Arizona who turn out to be citizens of foreign countries to DHS to be deported. By contrast, under the Defendants' new executive actions, those persons will not be subject to

deportation. Therefore, they will serve out their criminal sentences in Plaintiff Arpaio's jails, costing his office enormous time and expense.

- Moreover, Plaintiff Arpaio has also been threatened physically by some of these same illegal aliens, which directly impacts his constitutional rights and causes harm. In fact, there are multiple crimes inherent in threatening a law enforcement official. (Exhibit 2).

- Defendants are not, in fact, deporting illegal aliens convicted of crimes in Maricopa County, Arizona. The Plaintiff has booked perpetrators of state-law crimes into his jails, discovered that they are not citizens or Lawful Permanent Residents (LPRs) and then handed those criminals over to ICE at DHS for deportation. Those same illegal aliens placed in DHS custody are then re-arrested for new state-law crimes in Maricopa County, Arizona relatively soon thereafter, increasing detention costs in the county's jails.

- As a result, Defendants will not lower the crime rate by reallocating resources, but will create a waste and strain the resources of Plaintiff Arpaio and his office.

- Finally, the illegal aliens at issue, as a result of now obtaining work permits, will then be able to receive driver's licenses which will, based on Plaintiff's experience, allow them to fraudulently register to vote. This is true in practice. Under the "Motor Voter" law, those applying for a driver's license are encouraged to apply to vote. Many will mistake this invitation for permission or advice that they may vote. Some will ignore the distinction

knowingly.  The nation's voting system operates on the honor system, without an investigation unless there is a complaint brought first.

- Meanwhile, Plaintiff Arpaio, as an elected official who has already been subjected to one failed recall in 2012, will thus be directly impacted by illegal aliens who will again seek to remove him from office by voting unlawfully. (Exhibit 3).

Therefore, Plaintiff respectfully requests that he be permitted to testify on these points pivotal to his standing to legally challenge the unconstitutional and illegal actions of the Defendants, and the harm which flows therefrom to him and his office. This will aid the Court in reaching a fair and just disposition of Plaintiff's Motion for Preliminary Injunction by creating a full record. It will also allow Defendants' counsel to cross examine Plaintiff Arpaio, which is also in the interest of justice to get to the full and uncontroverted truth of what he has pled in the Complaint and his supporting affidavit. Live testimony is generally permitted when jurisdiction and standing are subject to challenge. *See generally, McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should respectfully allow live testimony of Plaintiff Arpaio at the hearing now scheduled for December 22, 2014.

Dated: December 17, 2014                                   Respectfully submitted,

                                                          */s/ Larry Klayman*
                                                          Larry Klayman, Esq.
                                                          Washington, D.C. Bar No. 334581
                                                          Freedom Watch, Inc.
                                                          2020 Pennsylvania Avenue N.W., Suite 345
                                                          Washington, D.C. 20006
                                                          (310) 595-0800
                                                          leklayman@gmail.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of December, 2014 a true and correct copy of the foregoing motion was served by electronic filing through the Court  to the following:

> ADAM D. KIRSCHNER, Esq.
> HECTOR G. BLADUELL
> BRADLEY H. COHEN
> KYLE R. FREENY
> JULIE S. SALTMAN
> Trial Attorneys
> Civil Division, Federal Programs Branch
> U.S. Department of Justice
> P.O. Box 883
> Washington, D.C. 20044
> Tel.: (202) 353-9265
> Fax: (202) 616-8470
> Adam.Kirschner@usdoj.gov
> *Attorneys for Defendants*